The UNITED STATES of America for the Use and Benefit.of EMPIRE PLAS-TICS CORP., a Colorado corporation, Appellant,

v.

WESTERN CASUALTY & SURETY COMPANY, Appellee.

No. 521–69.

United States Court of Appeals, Tenth Circuit.

July 21, 1970.

John M. Cogswell, Denver, Colo. (Thomas W. Whittington, Denver, Colo., with him on the brief), for appellant.

Charles F. Bennett, of Murray, Baker & Wendelken, Colorado Springs, Colo., for appellee.

Before MURRAH, HILL and HICK-EY, Circuit Judges.

MURRAH, Circuit Judge.

The central question on this appeal is whether Empire Plastics may recover on a bid bond executed by Western Casualty & Surety Co. for materials furnished in connection with a construction contract between Hayes Construction Co. and the Ent Air Force Base Exchange. Prior to June 1, 1967, the Exchange requested bids for the renovation of a building located on the base and, pursuant to applicable federal regulations,[1] required that all bids be accompanied by a bid bond.

Hayes procured the bid bond from Western[2] and submitted the winning

---

1. Although the exchange was a non-appropriated fund activity to which the Armed Forces Procurement Regulations were inapplicable, 32 C.F.R. § 1.102, the Federal Procurement Regulations required such a bond. 41 C.F.R. § 1–10.103–1(a).

2. The condition and penal clauses of the bond stated:

   THE CONDITION OF THIS OBLI-GATION is such that if the aforesaid Principal shall be awarded the contract the said Principal will, within the time

bid. Apparently on the same date it entered into the construction contract. That contract required Hayes to secure a performance and payment bond "to guarantee a faithful performance of all work included within the Agreement and for the payment of all costs on account thereof * * *." Hayes secured the required performance bond, completed the contract without securing a payment bond, and subsequently became insolvent. Empire, apparently unaware that no payment bond had been given, supplied material to Hayes which was used in the contract work. When Hayes failed to pay its bill Empire brought this suit against Western.[3] The pretrial order agreed to by the parties admitted federal jurisdiction under 28 U.S.C. § 1352 and specified that the only issue was the legal question of Empire's right to recover on the bid bond. The case was submitted for decision on Empire's motion for summary judgment, which the trial court denied. Treating the matter as a trial to the court upon undisputed facts, the court then granted judgment for Western, apparently concluding that federal jurisdiction was non-existence and that in any event Empire was not entitled to recover on the bond.

Since the regulations requiring the bonds had the "force of law," Paul v. United States, 371 U.S. 245, 255, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963), the bid bond was necessarily executed under federal law as required by 28 U.S.C. § 1352 [4] and we think the District Court

had jurisdiction. Adams v. Greeson, 300 F.2d 555 (10th Cir. 1962); United States for the Use and Benefit of Victory Electric Corp. v. Maryland Cas. Co., 213 F.Supp. 800, 803 (E.D.N.Y.1962), on rehearing 215 F.Supp. 700, 701–702.

On the merits, Empire takes the position that the bid bond's promise to "give such good and sufficient bond or bonds as may be required * * *" necessarily obligated Hayes and Western to secure a statutory payment bond and that this obligation was necessarily intended for the benefit of third-party laborers and materialmen. We agree.

Hayes' $41,447.00 contract for the repair of the Exchange's buildings was undoubtedly subject to the Miller Act, which required a payment bond on contracts "exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States. * * *" 40 U.S.C. § 270a. And see 41 C.F.R. §§ 1–10.105–1, 1–10.103–1(a). Although the Exchange is a non-appropriated fund activity, title to the buildings it uses on the military base is in the United States and the contract was thus one for the repair of public buildings of the United States. See United States for the Use of Gamerston & Green Lumber Co. v. Phoenix Assurance Co., 163 F.Supp. 713 (N.D.Cal.1958); cf. United States for the Use and Benefit of Miles Lumber Co. v. Harrison & Grimshaw Constr. Co., 305 F.2d 363, 366 (10th Cir. 1962). In sum, Hayes' and Western's promise in

---

required, enter into a formal contract and give such good and sufficient bond or bonds as may be required to secure the performance of the terms and conditions of the contract, then this obligation to be void; otherwise the Principal and Surety will pay unto the Obligee the difference in money between the amount of the bid of the said Principal and the amount for which the Obligee legally contracts with another party to perform the work if the latter amount be in excess of the former, but in no event shall the Surety's liability exceed the penal sum hereof.

3. Empire originally sought recovery on both bid and payment bonds, but the claim on the payment bond was voluntarily dismissed when Empire discovered there was no such bond. The Ent Air Force Base Exchange and the estate of Leonard Hayes, sole proprietor of Hayes Construction Co., were also originally joined as defendants; the claims against these parties were dismissed, however, and are not involved on this appeal.

4. Section 1352 provides:
The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States.

the bid bond to give "such good and sufficient bond or bonds as may be required" must be read to include the performance and payment bonds required by the Miller Act. The promise to execute these bonds became valid and enforceable when Hayes' bid was accepted and was breached by his subsequent failure to provide a payment bond. We do not understand Western to contend otherwise.

Western does argue, however, that the "otherwise" clause of the bid bond was intended to be the exclusive measure of liability under that bond and that the liability under that clause for failure to provide "good and sufficient * * * bonds" is the payment to the Exchange of the difference between the bid price and the amount for which the Exchange contracts with another to perform the work. Western suggests that since Hayes performed the construction contract and secured the performance bond, its liability under the bid bond is a nullity.

We reject this argument because the "otherwise" clause, by its terms, deals with the situation where the contractor fails to perform the contract and to provide a performance bond. In our case the asserted liability is based on breach of the bid bond's promise to provide a statutorily required payment bond. Western tacitly admits that the bid bond did so promise, and the only purpose of this promise could have been to benefit third-party laborers and materialmen. United States for the Use and Benefit of Victory Electric Corp. v. Maryland Cas. Co., supra; and see Strong v. American Fence Co., 245 N.Y. 48, 156 N.E. 92 (1927). We cannot agree that the parties intended the "otherwise" clause to defeat this clear and unequivocal promise to provide a Miller Act payment bond. As Mr. Justice Cardozo, then Judge Cardozo, once said in a situation not unlike ours, "Security to materialmen and laborers was the end and aim of the transaction. If the promise was not for them, it was without significance or reason." Strong v. American

Fence Constr. Co., supra. See also United States for the Use and Benefit of Victory Electric Corp. v. Maryland Cas. Co., supra. The judgment is reversed and remanded with directions to enter judgment for Empire Plastics.