ATLANTIC COAST INSULATING CO., Inc., Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

MARYLAND CASUALTY COMPANY, Third-Party Defendant, and

Grace Line, Inc., Third-Party Defendant.

UNITED STATES for the Use of KINGS COUNTY STOKER & FUEL CORP. and Vulpolene Corporation, and Kings County Stoker & Fuel Corp. and Vulpolene Corporation, Plaintiffs,

v.

MONTI MARINE CORPORATION, Maryland Casualty Company and the United States of America, Defendants.

Nos. 61 C 1016, 62 C 704.

United States District Court
E. D. New York.

March 4, 1964.

Gilbert S. Fleischer, (Joseph P. Hoey, U. S. Atty., and Louis E. Greco, Atty. in Charge, New York Office, Admiralty & Shipping Section, Dept. of Justice, of counsel), for defendant (in both cases) and third-party plaintiff United States.

Emil V. Pilz, New York City, (Nevius, Jarvis & Pilz, New York City, of counsel), for third-party defendant and defendant Maryland Cas. Co.

Doris L. Sassower, New York City, (Sassower & Sassower, New York City, of counsel), for use-plaintiffs in 62 C 704.

DOOLING, District Judge.

Third-party defendant and defendant Maryland Casualty Company served in 61 C 1016, and the Use-plaintiffs served in 62 C 704, notices to take the deposition of the United States as an adverse party (a) by Nathan Louis, a Contract Specialist, Grade 11, in the office of the Industrial Manager of the Department of the Navy, New York Naval Shipyard, Brooklyn, New York, and (b) by Commander W. A. Pace, U.S.N., Supervisory Officer to Lt. Commander R. L. McKittrick, who was the Contracting Officer at all material times on contracts of the kind in question. The Notices to take depositions also called for the production at the depositions of all file and record materials bearing on the vessels U.S.S. Capricornus and U.S.S. Tanner, on the bids, bid bonds, payment bonds and performance bonds on the 1961 repair jobs on the two vessels, on the letting of the 1961 repair jobs on the two vessels, on the performance of and payments made for those jobs, on contracting procedures in force at the time of the jobs, on the financial condition of the repair contractor, Monti Marine Corporation, and on the omission to issue or the issuance

of performance and payment bonds on the 1961 repair jobs on the two vessels. The Maryland's notice is stated to be applicable in all cases involving the Capricornus and the Tanner in which both Maryland and the United States are parties. There are more than a dozen such cases pending in this Court.

The United States moves to vacate the notice as to Commander Pace; and to limit it, as to Nathan Louis, so that it becomes a witness deposition, is limited as to topics, and restricted in the production of documents.

The cases arise out of the twin facts that the United States apparently omitted to obtain Miller Act payment and performance bonds on the 1961 repair jobs on the Capricornus and the Tanner (See 40 U.S.C.A. § 270a (a)) and that the repair contractor, Monti Marine Corporation, although it apparently performed the repair contracts and was paid by the United States, became insolvent, leaving a number of materialmen both unpaid and unaccountably unprotected by the normally expectable Miller Act payment bonds. (See as to the nature of the legal complexities in these and similar cases United States for use of Victory Electric Corp. v. Maryland Casualty Company, E.D.N.Y.1963, 213 F.Supp. 800, 215 F. Supp. 700; United States v. Smith, 5th Cir. 1963, 324 F.2d 622).

The circumstances of the case, the large number of cases, claims and claims over that have arisen out of the 1961 events, and the inexplicableness of the chain of episodes, leading to the materialmen's loss of their statutory protection, make it inevitable that depositions will have to be somewhat more extensive than usual and make it desirable, too, that they be pursued both without repetition and without a superficiality that will, later, multiply alternative discovery efforts.

■ It is unwise to attempt now to decide that Nathan Louis is or is not a "managing agent" within Rule 26(d) (2)

for, in the end, that is a matter that must be reconsidered at the trial, and, then, in the light of Nathan Louis' own testimony and that of the officers under whose direction he worked. Cf. Santiago v. American Export Lines, Inc., S.D.N.Y. 1962, 30 F.R.D. 372. A determination of that point now is legally useless for it has no bearing on whether it is proper to take the deposition—and it is—and no bearing on what the trial judge, possessed of the evidence and the responsibility for decision, must decide. What is manifest is that Nathan Louis' testimony must be taken, that the nature of his duties, authorities and assignments must be developed for all the purposes of the cases, and that no useful topical limitation can be imposed except that explicit in Rule 26(a) (b). It is manifest, too, that the United States is in a position to and under a duty to produce Nathan Louis whether he be "witness" or "party." The present motion achieves its objective by making clear that the United States denies that Nathan Louis is its "managing agent." His status now becomes not a matter of tacit concession but a topic of examination during the deposition and, perhaps, at trial. The testimony of Nathan Louis is not shorn of relevancy or of importance. The order to be settled should, therefore, provide that Nathan Louis' testimony be taken under Rule 26(a) without prejudice to the contention of the United States that his deposition cannot be read against it under Rule 26(d) (2).

■ The deposition of Commander Pace should not be vacated. Issues of "authority" lurk just under the surface of the case and extend beyond Lt. Commander McKittrick; it is said that the latter rendered a report to Commander Pace on the topic involved and that fact is not without implications. If Commander Pace is on distant duty, then a proper regard should be had to fixing a time and place that will not create any avoidable inconvenience and will yet meet the needs of the litigation. The alterna-

tive of written interrogatories under Rule 31 is always present, although not often fully satisfactory and too often more laborious than productive. The order should provide in some form for taking Commander Pace's deposition in the reasonably near future.

■ The request for production is broad; it appears, however, to be the breadth of precaution and not that of harassment. The outsider could be precise and could impose a light burden of disclosure if he knew the records as the record keeper may be supposed to know his own records. But the outsider has not that knowledge and so, to avoid a frustrated examination, he weaves as close a net as he can. That is what seems to be present here. One detects a plain note of having "learned a lesson" from what is evidently considered to have been an unsatisfactory deposition session with Lt. Commander McKittrick, one that might have been more useful in progressing the case if records had been unrestrictedly at hand to support the officer's recollection and give it point and application.

Specifically, only items (a) and (b) appear too broad, and their offensive breadth is in point of time. They should be limited to the portions of the folders covering the time periods involved in the repair jobs in question, including a reasonable period preceding, covering the preparations to let the work, and including any material, whatever its date, relating to the 1961 repair jobs and to formulating the invitation for bids, processing bids received, obtaining or not obtaining bid-bonds, payment bonds and performance bonds relating to the 1961 repair jobs, and to payments on such repair jobs. The order should so limit items (a) and (b) and, otherwise, confirm the request of the notice to produce.

Settle order on five days notice within fifteen days. Counter orders to be settled to the same date on two days notice.